IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division



FILED MAR 30 2011 CLERK, U.S. DISTRICT COURT ALEXANDRIA, VIRGINIA

| | |
|---|---|
| CHARLOTTE M. LANDES )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAVALRY PORTFOLIO SERVICES, LLC )<br>)<br>Defendant. ) | 1:11cv33 (LMB/IDD) |

## MEMORANDUM OPINION

Before the Court is the defendant's Motion to Dismiss [Dkt. No. 4]. For the reasons discussed below, that motion will be granted.

### I. Background

This civil action involves a complaint for alleged violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, et seq.[1] The named plaintiff, Charlotte Landes ("Landes"), is a citizen of the Commonwealth of Virginia and qualifies as a "consumer" as that term is defined in the FDCPA. See 15 U.S.C. § 1692a(3) (defining a consumer as "any natural person obligated or allegedly obligated to pay any debt"). She alleges that she incurred a debt for personal, family, or household purposes, and that defendant Cavalry Portfolio Services, LLC ("Cavalry"), a New

---

[1] Although the Complaint purports to be a class action, plaintiff has not filed any pleadings seeking class certification as required under Fed. R. Civ. P. 23. Instead, plaintiff's Complaint merely states that "[i]f the facts are discovered to be appropriate, Plaintiff will seek to certify the class under Rule 23(b)(3)." Pl.'s Compl. ¶ 22.

York corporation whose principal business is the collection of debts using the mail and telephone and which therefore qualifies as a "debt collector" under 15 U.S.C. § 1692a(6), violated the FDCPA in seeking to collect on that debt. See Pl.'s Compl. ¶¶ 8-12; 17.

At issue in this case is a "dunning" (debt collection) letter that Cavalry mailed to Landes on April 27, 2010, stating, among other things, that "Cavalry wants you to get the most out of your tax refund this year" and that "Cavalry wants you to get tax season savings!" Id. ¶¶ 14-15; see also id. at Ex. 1 (Cavalry's April 27, 2010 debt collection letter). In that letter, Cavalry offered Landes a 20% discount if she paid the full remaining balance on her account, such that she could settle her account for only $9,350.84. See Ex. 1. Alternatively, Cavalry also offered Landes a 10% discount if she paid off her debt in five monthly installments of $2,103.94 each. Id.

Plaintiff's Complaint alleges that Cavalry's letter violated the FDCPA because it sought to deceive and mislead consumers by failing to advise them of the potential tax consequences of accepting the discount offer (i.e. that the consumer would have to report the 10% or 20% discount as discharge-of-indebtedness income to the Internal Revenue Service, for which the consumer might be liable to pay taxes). Specifically, Landes alleges that "[b]y failing to notify consumers of the potential tax consequences of the discount offer, when taken in conjunction with the claim of a

2

tax season savings, [Cavalry] violated 15 U.S.C. §§ 1692e(2), 1692e(10), and 1692f by seeking to deceive and mislead him [sic] into accepting a discounted amount." Pl.'s Compl. ¶ 17. Landes therefore brings suit on behalf of herself and other similarly situated individuals, seeking relief in the form of statutory damages,[2] attorneys' fees and costs, a declaratory judgment, and an injunction against Cavalry sending further letters offering debt discounts without a notice of the attendant tax ramifications of those discounts. Id. ¶¶ 18-22; see also id. at 5-6.

Defendant Cavalry has filed a Motion to Dismiss [Dkt. No. 4], in which it argues that Landes has failed to allege a prima facie case for violation of the FDCPA, and that her Complaint is implausible on its face. Specifically, Cavalry contends that it cannot be held civilly liable for failing to dispense legal advice to consumers about the tax consequences of accepting a debt discount, an activity which would constitute the unauthorized practice of law.

## II. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), a complaint should not be dismissed "unless it appears certain that [plaintiff] can prove no set of facts that would support his claim and would entitle him to

---

[2] According to plaintiff's counsel during oral argument on the instant motion, the plaintiff did not respond to Cavalry's letter and therefore suffered no actual financial injury as a result of the allegedly misleading offer.

relief." Smith v. Sydnor, 184 F.3d 356, 361 (4th Cir. 1999). The Court must accept all of the complaint's well-pleaded allegations as true and view them in the light most favorable to the plaintiff. Smith, 1184 F.3d at 361. However, that requirement applies only to facts, not to legal conclusions. Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). In addition, "if the well-pled facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]'- that the pleader is entitled to relief." Id. at 1950. Particularly where potentially costly discovery is concerned, "factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Accordingly, the Supreme Court has held that to satisfy the pleading requirements of Fed. R. Civ. P. 8(a), a complaint must include a plausible statement of the claim showing that the pleader is entitled to relief and providing the defendant with fair notice of "what . . . the claim is and the ground upon which it rests." Id. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 557. Rather, "only a complaint that states a *plausible* claim for relief survives a motion to dismiss." Iqbal, 129 S. Ct. at 1950 (emphasis added).

4

### III. Discussion

Defendant's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) will be granted because plaintiff has failed to state any plausible claim to legal relief. Boiled down to its essence, the Complaint essentially amounts to a claim that Cavalry violated the FDCPA by failing to advise Landes and other consumers of the tax consequences of accepting a discount of their debt. However, there is no language anywhere in the FDCPA that mandates such affirmative disclosures by a debt collector. The provisions cited by plaintiff in her Complaint, 15 U.S.C. §§ 1692e(2), 1692e(10), and 1692f, provide only that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt," 15 U.S.C.A. § 1692f, and that:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .
>
> (2) The false representation of -
>
> > (A) the character, amount, or legal status of any debt; or
> >
> > (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt. . . [and]
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C.A. §§ 1692e(2) & 1692e(10).

5

In this case, it is incontestable that Cavalry's dunning letter did not make any false or misleading statements, nor did the letter employ unfair, deceptive, or unconscionable practices. Cavalry's letter simply offers a routine discount to help the consumer settle her debt for a reduced amount; specifically, Landes was offered a 20% discount if she made a lump sum payment of $9,350.84, and a 10% discount if she paid in five monthly installments. See Pl.'s Compl. Ex. 1. Plaintiff has not alleged that the letter misrepresented the character, amount, or legal status of her outstanding debt, nor did it falsely represent any services rendered or compensation which may be lawfully received by Cavalry as a debt collection agency. Finally, simply offering to discount a debt to encourage the consumer to pay promptly is in no way a deceptive or unconscionable debt collection practice. See Lewis v. ACB Bus. Servs., Inc., 135 F.3d 389, 399 (6th Cir. 1998) ("To hold that a debt collector cannot offer payment options as part of an effort to resolve an outstanding debt . . . is clearly at odds with the language and purpose of the FDCPA.").

Accordingly, plaintiff's argument reduces to the contention that because Cavalry's letter mentions "tax season savings," yet does not spell out the specific tax consequences of accepting a debt discount, "Defendant was giving Plaintiff false and deceptive tax advice . . . that would mislead the least sophisticated consumer." See Pl.'s Opp. to Def.'s Mot. to Dismiss Compl. ["Pl.'s Opp.] at 4-5. However, plaintiff's

6

argument is implausible on its face, and in fact is premised on a misreading of the dunning letter, which does not offer any tax advice or promise any tax savings. Instead, the letter merely offers a discount during *tax season* (a time of the year when many taxpayers have extra funds as a result of tax refunds), suggesting that consumers "get the most out of [their] tax refund[s]" by using the refunds to pay down their debt. See Pl.'s Ex. 1.³ Moreover, although Landes alleges that the references to "get[ting] the most out of your tax refund this year" and "get[ting] tax season savings," see id., could confuse an unsophisticated consumer, the Fourth Circuit's "least sophisticated debtor" standard still presumes "a basic level of understanding and willingness to read with care." United States v. Nat'l Financial Servs., Inc., 98 F. 3d 131, 126 (4th Cir. 1996).

In Landes's case, a careful reading of the letter reveals that the only promise being made by Cavalry was to reduce the amount of indebtedness by a specified percentage if the debtor paid in full or on a specified payment schedule. Nowhere did

---

³ References to "tax season savings" are thus no different from letters sent at any other time when consumers might be experiencing greater-than-average cash flows, such as letters sent during the December holiday season encouraging consumers to use their year-end employment bonuses to settle their accounts. Plaintiff has cited no authority suggesting that such a collection letter would violate the FDCPA if unaccompanied by tax-related disclosures, and the Court has not found any such authority.

Cavalry promise that the discharge of indebtedness would or would not have potential tax consequences, and under the circumstances, no reasonable debtor could construe the language to suggest otherwise.

Landes nonetheless argues that Cavalry should have affirmatively advised her "that the 20% discount was required by the Internal Revenue Service to be reported as income to the consumer, for which the consumer would be liable to pay taxes." Pl.'s Compl. ¶ 16. However, Cavalry is simply a debt collection agency; it is not a law firm or an accounting firm of any sort. See id. ¶¶ 10-12. Cavalry is therefore not licensed or authorized by law to give legal or tax advice. Indeed, doing so would be a violation of Unauthorized Practice Rule 5-101 of the Rules of the Supreme Court of Virginia. See Va. Rule 5-101 (providing that "[a] non-lawyer shall not hold himself out as authorized to furnish to another advice or service under circumstances which imply his possession of legal knowledge or skill in the application of any law, federal, state or local, dealing with taxes"); see also Withers v. Eveland, 988 F. Supp. 942 (E.D. Va. 1997) (Merhige, J.) (holding that debt collection agencies are non-lawyers and cannot practice law or threaten legal action); Richmond Assoc. of Credit Men, Inc. v. Bar Assoc. of the City of Richmond, 167 Va. 327 (1937) (same).

Dispensing unauthorized tax advice in violation of Virginia's laws regarding the unauthorized practice of law could in fact lead

8

to *criminal* liability under Va. Code § 54.1-3904, which holds that "[a]ny person who practices law without being authorized or licensed shall be guilty of a Class 1 misdemeanor." See also Va. Code Ann. § 18.2-11 (providing that a conviction for a Class 1 misdemeanor is punishable by imprisonment for not more than twelve months and a fine of not more than $2,500.00). It is therefore facially implausible for Landes to assert that Cavalry's failure to risk criminal sanctions by providing her with tax advice regarding a specific debt reduction offer somehow constituted a violation of the FDCPA.

To be sure, including a standard disclaimer advising consumers that "accepting this offer may or may not result in tax consequences," and that they should consult their tax advisers with any questions or concerns, would not amount to the unauthorized practice of law. However, as explained above, the FDCPA itself does not require such disclosures. See supra at 5-6. Moreover, plaintiff's Complaint does not pursue that theory of recovery. Instead, plaintiff argues that Cavalry should have affirmatively advised her "that the 20% discount was required by the Internal Revenue Service to be reported as income . . . for which [she] would be liable to pay taxes." Pl.'s Compl. ¶ 16. Indeed, Landes asks this Court to enter an injunction requiring Cavalry to refrain from "sending [further] letters offering discounts *without a notice of the attendant tax ramifications.*" Id. at 5 (emphasis added). Yet providing such specific tax-

9

related notifications would amount to improper legal practice, because it would require Cavalry to perform a consumer-by-consumer analysis, taking into account numerous factors such as the consumer's tax status, potential insolvency, the amount of the cancelled debt, and the consumer's income level.[4] Any efforts undertaken by Cavalry to perform such a fact-intensive, nuanced analysis and to offer consumers specific tax advice regarding whether accepting an offer to discount their debt would result in taxable income would therefore clearly constitute the unauthorized practice of law.

Additionally, plaintiff has failed to cite any caselaw supporting the proposition that debt collectors like Cavalry are even required to make general statements such as "accepting this offer may result in tax consequences" in their collection letters. The only case plaintiff cites in support of her argument that Cavalry's discount offer was deceptive or misleading and that Cavalry should have clarified the tax consequences of its offer is Ellis v. Cohen & Slamowitz, 701 F. Supp. 2d 215 (N.D.N.Y. 2010). However, that case is inapposite, as it involved a *law firm* that sent misleading letters to consumers offering savings on a debt

---

[4] For example, among other things: (1) a cancellation of indebtedness of less than $600 does not need to be reported as income, see 26 U.S.C.A. § 6050P(b); (2) a cancellation of indebtedness does not need to be reported as income if the consumer is insolvent, see 26 U.S.C.A. § 108(a)(1)(B); and (3) settled debts which are legitimately disputed do not have to be reported as taxable income, see 2 Mertens, Law of Federal Income Taxation, § 11.19 at 42 (1996).

owed to a bank. In <u>Ellis</u>, a court in the Northern District of New York expressed serious concerns about the plausibility of the plaintiff's FDCPA claims, but ultimately denied the defendant's motion to dismiss, holding that "while the court shares [the defendant's] concerns about whether this specific practice was intended to be covered by the FDCPA, . . . [the plaintiff] has adequately alleged a cause of action [against the law firm]," and the "motion to dismiss [the] first cause of action is denied *at this juncture.*" <u>Id.</u> at 220 (emphasis added).

<u>Ellis</u> is distinguishable from the instant case because it involved a law firm which is legally permitted to dispense tax advice, while Cavalry is a debt collection agency that may not provide such advice without running afoul of Virginia law. Moreover, <u>Ellis</u> is not binding precedent in this district, and this specific issue was never fully decided on the merits in <u>Ellis</u> itself because the parties settled the matter before the Northern District of New York could issue any final ruling. Accordingly, the mere fact that a cause of action against a *law firm* in another district narrowly survived a motion to dismiss, notwithstanding the court's expressed reservations as to whether the plaintiff's theory even stated a viable FDCPA claim, is in no way persuasive authority for allowing this action to proceed against a *non-lawyer* defendant like Cavalry in this district.

Finally, plaintiff contends that if the Court accepts Cavalry's argument, it would "open the door" to "allowing debt-

11

collectors to knowingly take illegal actions or give half-truths," and would therefore undermine holdings such as <u>Kimber v. Federal Financial Corp.</u>, 668 F. Supp. 1480 (M.D. Ala. 1987) and <u>West v. Costen</u>, 558 F. Supp. 564 (W.D. Va. 1983). <u>See</u> Pl.'s Opp. at 5. However, even setting aside the fact that neither of those cases is controlling precedent in this district, those cases are also easily distinguishable from this one. In <u>Kimber</u>, a debt collector was found to have violated the FDCPA by threatening to sue and initiating a lawsuit to collect on a debt that was beyond the relevant statute of limitations period. In <u>West</u>, the court granted summary judgment in favor of a consumer where a debt collector misrepresented the amount of the debt and sought to collect fees not expressly agreed to by the consumer.

Neither <u>West</u> nor <u>Kimber</u> requires the debt collector to practice law; rather, the holdings stand only for the uncontroversial proposition that debt collectors cannot engage in unfair and deceptive practices, such as seeking to collect on amounts not actually owed or providing materially false information to consumers. By contrast, nothing in the text of the Calvary dunning letter at issue here is materially false or misleading. And tasking Cavalry with interpreting the complex provisions of the federal tax code and then applying its interpretations to the varying circumstances of individual consumers like Landes *would* constitute the unauthorized - and potentially criminal - practice of law.

12

Because Cavalry is not permitted or authorized to engage in legal practice or to offer tax advice, plaintiff's cause of action is facially implausible. Accordingly, the Complaint will be dismissed with prejudice under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## IV. Conclusion

For all these reasons, defendant's Motion to Dismiss [Dkt. No. 4] will be granted and this action will be dismissed by an Order to be issued with this Memorandum Opinion.

Entered this 30th day of March, 2011.

Alexandria, Virginia

/s/ _____
Leonie M. Brinkema
United States District Judge